**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>Farfetch Limited (in Official Liquidation),<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. 24-11519 |

# MEMORANDUM OF LAW IN SUPPORT OF VERIFIED PETITION

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

FACTUAL BACKGROUND ..... 3

JURISDICTION AND VENUE ..... 3

ARGUMENT ..... 4

I. The Company is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code ..... 4

II. Recognition of the Cayman Proceeding as a "Foreign Main Proceeding" is Appropriate. ..... 5

- A. The Cayman Proceeding is a Foreign Proceeding. ..... 5
- B. The Cayman Proceeding Should be Recognized as a Foreign Main Proceeding. ..... 7
- C. In the Alternative, the Cayman Proceeding Should Be Recognized as a Foreign Nonmain Proceeding ..... 13

III. The Chapter 15 Case Has Been Commenced by Duly Authorized Foreign Representatives. ..... 14

IV. The Petitioners Meet the Requirements of Section 1515 ..... 15

V. Recognition of the Cayman Proceeding Is Not Manifestly Contrary to U.S. Public Policy ..... 16

VI. Recognition Promotes the Purpose and Scope of Chapter 15 ..... 17

VII. Mandatory Relief under Section 1520 ..... 18

VIII. Additional Relief Pursuant to Section 1521 ..... 18

CONCLUSION ..... 21

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*In re ABC Learning Centres*,
445 B.R. 318 (Bankr. D. Del. 2010) ........ 7, 8, 14, 15

*In re ABC Learning Centres Ltd.*,
728 F.3d 301 (3d Cir. 2013) ........ *passim*

*In re Am. Pegasus, SPC*,
Case No. 11-34429 (Bankr. S.D.N.Y. Dec. 23, 2011) [Docket No. 20] ........ 6, 14

*In re Amerindo Internet Growth Fund Ltd.*,
Case No. 07-10327 (Bankr. S.D.N.Y. Feb. 9, 2007) [Docket No. 7] ........ 6

*In re Ascot Fund Ltd.*,
603 B.R. 271 (Bankr. S.D.N.Y. 2019) ........ 6, 14

*In re Basis Yield Alpha Fund (Master)*,
381 B.R. 37 (Bankr. S.D.N.Y. 2008) ........ 6

*In re Bemarmara Consulting A.S.*,
No. 13-13037-KG (Bankr. D. Del.), Docket No. 38 ........ 4

*In re British Am. Ins. Co. Ltd.*,
425 B.R. 884 (Bankr. S.D. Fla. 2010) ........ 13

*In re Chiang*,
437 B.R. 397 (Bankr. C.D. Cal. 2010) ........ 8

*In re Comair Ltd.*,
No. 21-10298, 2021 WL 5312988 (Bankr. S.D.N.Y. Nov. 14, 2021) ........ 20

*In re Ephedra Prods. Liability Litig.*,
349 B.R. 333 (S.D.N.Y. 2006) ........ 16

*In re Fairfield Sentry Ltd.*,
452 B.R. 52 (Bankr. S.D.N.Y. 2011) ........ 21

*In re Fairfield Sentry Ltd.*,
714 F.3d at 137–38 ........ 11

*In re Global Ocean Carriers*,
251 B.R. 31 (Bankr. D. Del. 2000) ........ 5

*Hoffman v. Bullmore (In re Nat'l Warranty Ins. Risk Retention Group)*,
306 B.R. 614 (BAP 8th Cir. 2004) ........ 6

*In re Ionosphere Clubs, Inc.*,
922 F.2d 984 (2d Cir. 1990) .......... 17

*In re Irish Bank Resolution Corp. Ltd.*,
559 B.R. 627 (Bankr. D. Del. 2016) .......... 21

*In re Irish Bank Resolution Corp. Ltd.*,
No. 13–12159, 2014 WL 9953792 (Bankr. D. Del. 2014) .......... 5-6

*In re Millard*,
501 B.R. 644 (Bankr. S.D.N.Y. 2013) .......... 6

*In re Millenium Global Emerging Credit Master Fund Ltd.*,
471 B.R. 342 (Bankr. S.D.N.Y. 2012) .......... 20

*In re Millennium Glob. Emerging Credit Master Fund Ltd. (Millenium Glob. I)*,
458 B.R. 63 (Bankr. S.D.N.Y. 2011) .......... 13

*In re Modern Land (China) Co., LTD.*,
641 B.R. 768 (Bankr. S.D.N.Y. 2022) .......... 11

*Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*,
714 F.3d 127 (2d Cir. 2013) .......... 8, 11, 14

*O'Sullivan v. Loy (In re Loy)*,
432 B.R. 551 (E.D. Va. 2010) .......... 19-20

*In re Ocean Rig UDW Inc.*,
570 B.R. 687 (Bankr. S.D.N.Y. 2017) .......... 6, 8, 9. 14

*In re Olinda Star Ltd.*,
614 B.R. 28 (Bankr. S.D.N.Y. 2020) .......... 5

*In re PT Bakrie Telecom Tbk*,
601 B.R. 707 (Bankr. S.D.N.Y. 2019) .......... 5

*In re Qimonda AG*,
482 B.R. 879 (Bankr. E.D. Va. 2012) .......... 19

*In re SPhinX, Ltd.*,
351 B.R. 103 (Bankr. S.D.N.Y. 2006) .......... 8, 9, 11

*In re Suntech Power Holdings Co., Ltd.*,
520 B.R. 399 (Bankr. S.D.N.Y. 2014) .......... 11, 12

**Statutes**

11 U.S.C. § 101(23) .......... 5, 6, 7

11 U.S.C. § 101(24) ....................1, 14, 15

11 U.S.C. § 103(a) ....................21

11 U.S.C. § 108....................3, 21

11 U.S.C. § 109(a) ....................4, 5

11 U.S.C. § 361....................18

11 U.S.C. § 362....................18, 19

11 U.S.C. § 363....................18

11 U.S.C. § 549....................18

11 U.S.C. § 552....................18

11 U.S.C. § 1501....................3, 4, 5

11 U.S.C. § 1502(1) ....................4

11 U.S.C. § 1502(2) ....................8, 13

11 U.S.C. § 1502(4) ....................1, 5, 7

11 U.S.C. § 1502(5) ....................8

11 U.S.C. § 1504....................3

11 U.S.C. § 1506....................3, 4, 16

11 U.S.C. § 1507....................3

11 U.S.C. § 1508....................12

11 U.S.C. § 1509....................3

11 U.S.C. § 1515.................... *passim*

11 U.S.C. § 1516....................3, 8, 9

11 U.S.C. § 1517.................... *passim*

11 U.S.C. § 1520....................3, 18, 19, 20

11 U.S.C. § 1521....................3

11 U.S.C. § 1521(a) ....................18, 19, 20

11 U.S.C. § 1521(c) ....................18

11 U.S.C. § 1522(a) ....................18

28 U.S.C. § 157 ....................3

28 U.S.C. § 1334 ....................3

28 U.S.C. § 1410 ....................3

28 U.S.C. § 1746 ....................16

**Rules**

Fed. R. Bankr. P. 1007 ....................3

Fed. R. Bankr. P. 1007(a)(4) ....................3, 4

Fed. R. Bankr. P. 1007(a)(4)(A)–(B) ....................16

Fed. R. Bankr. P. 7007.1 ....................16

Fed. R. Bankr. P. 2004 ....................2, 19, 20

**Other Authorities**

Companies Act ....................6, 7, 10, 12, 20

Companies Act Schedule 3, Part I ....................6, 7

Companies Act Section 92(d) (2023 Revision) ....................1

Companies Act § 110(1)–(2) ....................7, 12, 14, 15

*UNCITRAL Model Law* ....................16

Petitioners Alexander Lawson and Christopher Kennedy of Alvarez & Marsal Cayman Islands Limited ("**Petitioners**") as Joint Official Liquidators of Farfetch Limited ("the **Company**"), foreign representatives in a Cayman Islands foreign proceeding[1] (the "**Cayman Proceeding**"), pending before the Grand Court of the Cayman Islands (Financial Services Division) (the **"Cayman Court"**) submit this Memorandum of Law in Support of their Verified Petition (the "**Verified Petition**") pursuant to sections 1515 and 1517 of chapter 15 of title 11 of the United States Code (the "**Bankruptcy Code**") seeking an order for (i) recognition of the Cayman Proceedings as a foreign main proceeding pursuant to sections 101(23) and 1502(4) of the Bankruptcy Code; (ii) recognition of the Petitioners as foreign representatives pursuant to section 101(24) of the Bankruptcy Code; and (iii) related and additional relief under sections 1520 and 1521.

## PRELIMINARY STATEMENT

As set forth in the Verified Petition, recognition is needed to aid the Cayman Proceeding. The Petitioners seek to: (i) stay actions against the Company or its assets in the U.S.; (ii) investigate and recover assets of the Company; (iii) provide a centralized forum for determination and adjudication of claims; and (iv) permit coordination between Cayman Court and this Court.

The Cayman Proceeding is a typical foreign liquidation proceeding, like many others that have been granted recognition by U.S. Bankruptcy Courts, and the Petitioners are typical and frequent foreign representatives. The Cayman Proceeding is also a foreign main proceeding. Before the Winding Up Order, the Company's registered office and the only place where it had a presence was in the Cayman Islands. The Company's stock was traded on the NYSE, and its

---

[1] Petitioners are Joint Official Liquidators of a liquidation under Section 92(d) of the Companies Act (2023 Revision) (the "**Cayman Act**").

numerous public filings with the SEC make clear that the Company was a Cayman company, subject to Cayman Islands laws, conducting its business in the Cayman Islands. After the filing of Winding Up Order (the relevant period), all activity is directed by the Petitioners and has occurred in the Cayman Islands, including hiring professionals, conducting meeting of creditors, forming a committee of creditors, communicating with constituents, collecting assets and requesting and collecting books and records of the Company, among other things. The Cayman Proceeding and foreign representatives have been recognized in the U.K.

Class Actions[2] and other actions have been filed in the U.S. against the Company and its former management relating to the Company's unexpected financial downfall and the sale of substantially all the assets of the Company—the Coupang Sale.[3] The Petitioners seek to stay the Actions against the Company and investigate these events.

As explained in the Verified Petition, the Company and its wholly owned subsidiary FF PLC had an unexpected liquidity crisis, which led to an expedited sales of substantially all of the assets of FF PLC (the Company's wholly owned subsidiary)—the Coupang Sale. The result was that unsecured creditors of the Company received no distribution from the sale. To investigate this sudden financial crisis and sale, the Petitioners need the ability to make Rule 2004 requests, send subpoenas, take examinations and obtain other critical information before and after the time of the Coupang Sale. While the Petitioners obtained some documents on a consensual basis, documents requests remain outstanding.

---

[2] To the extent a term is not defined herein, it is given the meaning in the Verified Petition.

[3] As set forth in the Verified Petition, the Company entered into a sale of the substantially all the assets of Farfetch PLC ("**FF PLC**") to Athena Topco LP ("**Athena Topco**"), which cancelled over $1 billion of intercompany claims owed to the Company, as well as a Bridge Loan with a 1.95x MOIC, and a revised Term Loan with a 0.95x MOIC both of which appeared to deter higher and better offers. This transaction was allegedly needed based on the Company's dire financial situation and lack of liquidity.

The Petitioners have fulfilled the requirements of Bankruptcy Code sections 1515 and 1517, and Bankruptcy Rule 1007(a)(4), including that recognition is not manifestly contrary to the public policy of the U.S. under section 1506. Upon recognition, the Actions against the Company will be stayed pursuant to section 1520, and Petitioners will be entitled to utilize Bankruptcy Code Section 108. Additional relief under section 1521 will further stay the Actions, prevent transfers of the Company's assets and require their turnover to the Petitioners. Additional relief will also permit a full investigation of the cause of the Company's downfall and the Coupang Sale.

Recognition will also allow the Petitioners to centralize its administration of the Company's foreign proceeding, distribute the proceeds of the Company in a central forum, and coordinate between the Cayman Court and this Court to maximize the value of the Company's interests in the assets.

## FACTUAL BACKGROUND

The Court is respectfully referred to the Verified Petition and the Declaration of Christopher Kennedy, which set forth the relevant facts in detail and are incorporated by reference as if fully set forth herein.

## JURISDICTION AND VENUE

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and section 1501 of the Bankruptcy Code. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(P). Venue is proper pursuant to 28 U.S.C. § 1410.[4] The statutory predicates for the relief requested herein are sections 108, 1504, 1507, 1509, 1515, 1516, 1517, 1520, and 1521 of the Bankruptcy Code and Bankruptcy Rule 1007.

---

[4] As explained below, and in the Verified Petition, the Company has assets in Delaware in the form of a retainer to counsel for the foreign representatives. Verified Petition at ¶¶ 11–12.

## ARGUMENT

Chapter 15 is designed to provide mechanisms for the fair and efficient administration of a foreign case, to allow cooperation between courts and parties in cross-border insolvencies and to protect and maximize the value of a foreign debtor's assets. *See* 11 U.S.C. § 1501.

Consistent with these objectives, the Petitioners have commenced this chapter 15 proceeding to obtain foreign main recognition of the Cayman Proceeding. Recognition is warranted if (a) the debtor is an "eligible" debtor; (b) the debtor is considered a foreign main or foreign nonmain proceeding under section 1517(a); (c) the chapter 15 proceeding is commenced by a duly authorized foreign representative; (d) the Verified Petition meets the requirements of section 1515 and Bankruptcy Rule 1007(a)(4); and (e) granting recognition is not manifestly contrary to public policy. 11 U.S.C. §§ 1501, 1506, 1515, 1517. Recognition is mandatory if each of these requirements are met. *In re ABC Learning Centres Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013). If a foreign proceeding is recognized, the Petitioners are entitled to mandatory relief under section 1520 and may be entitled to further additional relief under section 1521.

As detailed below, the Petitioners meet each of the recognition requirements, and are therefore entitled to mandatory and additional relief.

### I. The Company is an Eligible Debtor Under Chapter 15 of the Bankruptcy Code.

As a threshold matter, the Company is eligible to be a debtor in a chapter 15 case. A chapter 15 "debtor" is an entity that is the subject of a foreign proceeding. 11 U.S.C. § 1502(1). The Company is an entity that is the subject of a foreign proceeding taking place in the Cayman Islands. Kennedy Decl. ¶ 2.[5] The Company does not fall within any of the categories excluded

---

[5] As a chapter 15 debtor, the Company is not required to establish that it owns property within the United States under 11 U.S.C. § 109(a). *See In re Bemarmara Consulting A.S.*, No. 13-13037-KG (Bankr. D. Del.), Docket No. 38 at 8:14–9:18.

from chapter 15 eligibility. 11 U.S.C. § 1501(c). Although not a requisite to recognition, the Company also has property in the United States, including a retainer in Delaware paid to the IOLTA account of Reid Collins & Tsai LLP ("**Reid Collins**"),[6] and U.S. denominated bonds issued under an indenture governed by U.S. state law.[7] Accordingly, the Company is a debtor eligible for relief under chapter 15.

## II. Recognition of the Cayman Proceeding as a "Foreign Main Proceeding" is Appropriate.

Section 1517 of the Bankruptcy Code mandates that a court grant an order recognizing a foreign proceeding if the proceeding qualifies under section 101(23) as a foreign proceeding, and if the proceeding is a "foreign main proceeding." 11 U.S.C. §§ 1502(4), 1517(a)(1). A foreign main proceeding is one that is pending in the country where the debtor has "the center of its main interests." 11 U.S.C. § 1517(b)(1).

### A. The Cayman Proceeding is a Foreign Proceeding.

The Cayman Proceeding satisfies the definition of a "foreign proceeding." 11 U.S.C. § 101(23). The threshold requirement for recognition of a proceeding under section 1517(a) of the Bankruptcy Code is that it must constitute a "foreign proceeding." *See* 11 U.S.C. § 1517(a)(1); *In re ABC Learning Centres Ltd.*, 728 F.3d 301, 304 (3d Cir. 2013); *In re Irish Bank Resolution Corp.*

[6] *See In re Global Ocean Carriers*, 251 B.R. 31 (Bankr. D. Del. 2000) (retainers held in escrow by counsel for a debtor in the United States is "property" in the United States under § 109(a)). The retainer is being held in Reid Collins's U.S. bank account at PNC Bank NA in Delaware. *See* Verified Petition ¶¶ 11–12.

[7] New York law applies to the indenture. *In re PT Bakrie Telecom Tbk*, 601 B.R. 707, 715 (Bankr. S.D.N.Y. 2019) (holding that section 109(a)'s property requirement was satisfied where the debtor was an obligor on an indenture containing New York choice of law and forum selection clauses); *In re Olinda Star Ltd.*, 614 B.R. 28, 40 (Bankr. S.D.N.Y. 2020) (holding that notes governed by New York law indenture, which contemplated New York as a venue for disputes, satisfied section 109(a)'s property requirement). *See* Ex. 4 (3.75% Convertible Notes Indenture), at 87 ("This indenture and the notes, and any claim, controversy or dispute arising under or related to this indenture or the notes, will be governed by and construed in accordance with the laws of the state of New York.").

*Ltd.*, No. 13–12159, 2014 WL 9953792, at *12 (Bankr. D. Del. 2014). Section 101(23) defines a "foreign proceeding" as:

> a collective judicial or administrative proceeding in a foreign country, including an interim proceeding, under a law relating to insolvency or adjustment of debt in which proceeding the assets and affairs of the debtor are subject to control or supervision by a foreign court, for the purpose of reorganization or liquidation.

11 U.S.C. § 101(23). There is ample authority for the proposition that liquidation proceedings in the Cayman Islands—like the Cayman Proceeding—are "foreign proceedings." *E.g.*, *In re Ascot Fund Ltd.*, 603 B.R. 271, 278 (Bankr. S.D.N.Y. 2019) ("[C]ourts in this district have consistently recognized Cayman Islands liquidation proceedings as 'foreign proceedings' for purposes of chapter 15 of the Bankruptcy Code."); *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 702 (Bankr. S.D.N.Y. 2017) ("[Objecting Shareholder] could not point to any case in which a U.S. bankruptcy court found that a Cayman liquidation or scheme proceeding did not satisfy the requirements of section 101(23)" as a foreign proceeding under chapter 15.).[8] Here, the Cayman Proceeding satisfies the definition contained in section 101(23).

*First*, the Companies Act, which governs corporate insolvency in the Cayman Islands, is a "law relating to insolvency or adjustment of debt." Kennedy Decl. ¶¶ 21, 29. The key insolvency procedures of the Companies Act include liquidation, creditor arrangement, and receiverships. Companies Act Schedule 3, Part I. The Winding Up Order, which commenced proceedings under the Companies Act, authorizes the Petitioners to exercise a broad range of powers. Kennedy Decl. ¶¶ 22–23. These powers include, but are not limited to, bringing or defending legal proceedings,

[8] *See also In re Millard*, 501 B.R. 644, 650 (Bankr. S.D.N.Y. 2013) (explaining that Cayman proceeding qualified under Section 101(23) and was eligible for recognition under section 1517); *In re Basis Yield Alpha Fund (Master)*, 381 B.R. 37, 46 (Bankr. S.D.N.Y. 2008); *In re Am. Pegasus, SPC,* Case No. 11-34429 (Bankr. S.D.N.Y. Dec. 23, 2011) [Docket No. 20]; *In re Amerindo Internet Growth Fund Ltd.*, Case No. 07-10327 (Bankr. S.D.N.Y. Feb. 9, 2007) [Docket No. 7]. *cf. Hoffman v. Bullmore (In re Nat'l Warranty Ins. Risk Retention Group)*, 306 B.R. 614, 620–21 (BAP 8th Cir. 2004) (recognizing for purposes of former section 304, court supervised Cayman Islands winding-up proceedings).

seeking recognition of their appointment from United States courts, carrying on the company's business as necessary, paying creditors, and dealing with issues relating to the assets and winding up of the company. *Id.*; *see also* Companies Act Schedule 3, Part I.

*Second*, the Cayman Proceeding is a judicial liquidation proceeding in which the assets and affairs of the debtor are subject to control or supervision of a foreign court. Kennedy Decl. ¶ 29. Under the Companies Act, a Cayman Islands liquidator acts as an officer of the Cayman Islands courts and his actions are subject to review and reversal of those courts. *Id.*; Companies Act § 110.

*Third*, the Cayman Proceeding is a collective proceeding. "A proceeding is collective if it considers the rights and obligations of all creditors." *In re ABC Learning Centres*, 445 B.R. 318, 328 (Bankr. D. Del. 2010) (quoting *In re Betcorp.*, 400 B.R. 266, 281 (Bankr. D. Nev. 2009)), aff'd, 728 F.3d 301 (3d Cir. 2013). The Cayman Proceeding is a collective proceeding because it is being conducted for the benefit of the creditor body, and not just a single creditor. Kennedy Decl. ¶¶ 6, 29. The Companies Act provides that it is the function of an official liquidator "to collect, realize and distribute the assets of the company to its creditors and, if there is a surplus, to the persons entitled to it[.]" Companies Act § 110(1)(a). The Petitioners regularly consult with the creditors regarding issues that may arise in the liquidation, and a creditors' committee has been formed and a meeting of creditors has occurred. Kennedy Decl. ¶¶ 23–24. Accordingly, the Cayman Proceeding is a foreign proceeding because it satisfies each of the requirements of section 101(23).

**B. The Cayman Proceeding Should be Recognized as a Foreign Main Proceeding.**

A foreign proceeding can be recognized as either a "foreign main proceeding" or a "foreign non-main proceeding." 11 U.S.C. § 1517(a). A foreign main proceeding is one that is "pending in a country where the debtor has the center of its main interests" (COMI). 11 U.S.C. §§ 1502(4), 1517(b)(1). A foreign nonmain proceeding is one where "the debtor has an establishment—or a

place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. §§ 1502(2), 1502(5), 1517(b)(2). Here, the facts presented by the Petitioners support a finding that the Company's COMI is the Cayman Islands, and thus the Cayman Proceeding is a foreign main proceeding.

Although the Bankruptcy Code does not define "center of main interests," it sets forth an explicit statutory presumption that, "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests." 11 U.S.C. § 1516(c); *see ABC Learning Centres*, 445 B.R. at 333, aff'd, 728 F.3d 301 (3d Cir. 2013); *In re Ocean Rig*, 570 B.R. at 703.

Courts determine the debtor's COMI as of the filing date of the chapter 15 petition, "without regard to the debtor's historic operational activity." *In re Ocean Rig*, 570 B.R. at 704 (citing *Morning Mist Holdings Ltd. v. Krys (In re Fairfield Sentry Ltd.)*, 714 F.3d 127, 137 (2d Cir. 2013)). A debtor's COMI is often the location of the debtor's "nerve center," which is typically the place "from where the debtor's activities are directed and controlled," *In re Fairfield*, 714 F.3d at 138 n.10, or the location of those who actually manage the debtor. *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006). The jurisdiction whose law would apply to most disputes is also relevant, as is the location of the debtor's primary assets. *Id*. The place where creditors objectively determine the debtor to be located is another important factor. *In re Chiang*, 437 B.R. 397, 403 (Bankr. C.D. Cal. 2010) (indicating "the location of the COMI is an objective determination based on the viewpoint of third parties (usually creditors)").

While "each of these factors is a 'helpful guide,' in determining a debtor's COMI, the factors are not exclusive, and none of the factors is required or dispositive." *In re Ocean Rig*, 570 B.R. at 703 (citing *In re Fairfield Sentry Ltd.*, 714 F.3d at 137). Factors considered should also be

viewed "in light of chapter 15's emphasis on protecting the reasonable interests of parties in interest pursuant to fair procedures and the maximization of the debtor's value." *In re SPhinX, Ltd.*, 351 B.R. at 117. Thus, "[b]ecause their money is ultimately at stake, one generally should defer . . . to the creditors' acquiescence in or support of a proposed COMI." *Id.*[9]

Here, the factors weigh heavily in favor of finding that the COMI of the Company is in the Cayman Islands.

1. *The Company is registered in the Cayman Islands*. The Company's registered office is and has always been in the Cayman Islands. Kennedy Decl. ¶¶ 8, 30. Thus, absent evidence to the contrary, the rebuttable presumption set forth in section 1516(c) establishes that the center of main interests for the Company is the Cayman Islands.

2. *The Company is incorporated in the Cayman Islands.* The Company is an exempted company incorporated under the laws of the Cayman Islands with limited liability and publicly identifies as a Cayman Islands-incorporated company. Kennedy Decl. ¶ 8. Annual meetings of shareholders were held in the Cayman Islands. Ex. 2 to Verified Petition (Form 6-K, Oct. 17, 2023), at Ex. 99.1.

3. *The Company's SEC filings indicate that the Company is a Cayman Company, subject to Cayman Islands law.* The Company's numerous SEC filings prior to the Winding Up Order indicated to the public and to security holders that the Company was a Cayman Islands company whose rights will likely be governed by Cayman Islands law. Kennedy Decl. ¶ 14. The Company was required to comply with SEC disclosures due to the public dissemination

[9] In fact, although it was not done here, some courts even view a COMI shift as proper when it is done to "facilitate a value-maximizing restructuring of the Foreign Debtors' financial debt." *See, e.g.*, *In re Ocean Rig UDW Inc.*, 570 B.R. 687, 703 (Bankr. S.D.N.Y. 2017).

of its stock and its NYSE listing (it was delisted in January 2024).[10] The Company's Form 20-F for the fiscal year ended December 31, 2020, and subsequent years 2021 and 2022, discussed the Notes and the Company's overall capital structure, as well as the restrictions relating to the Company's status as a Cayman company. Farfetch Ltd., Annual Report (Form 20-F) (Mar. 4, 2021); Farfetch Ltd., Annual Report (Form 20-F) (Mar. 4, 2022); Farfetch Ltd., Annual Report (Form 20-F) (Mar. 8, 2023). The Company explained in its 2020 Form 20-F (filed March 4, 2021)[11] that it was required to make different and more limited SEC filings as a result of it being a Cayman Islands company. Farfetch Ltd., Annual Report (Form 20-F), at 57 (Mar. 4, 2021). The Company informed the public through the SEC filings that "corporate affairs [of the Company] [were] governed by our Articles, the Companies Act and the common law of the Cayman Islands." *Id.* at 58. Dividends were paid in accordance with Cayman Islands law.[12] *Id.* at 119. The Form 20-K explained that stakeholders rights were limited by Cayman Islands law and that a merger or consolidation could only proceed under Cayman Islands law. *Id.* at 58. Thus, creditors of the Company expected that a liquidation of the Company would occur in the Cayman Islands. The Company also retained a Cayman Islands law firm to provide advice in connection with the sale of the assets of the Company's wholly owned subsidiary, FF PLC.

4. *The nerve center of the Company is in the Cayman Islands*. Since the Cayman Court entered its Winding Up Order on February 9, 2024—the relevant period—all decisions applicable to the Company have been made by the Petitioners, who are Cayman Islands

[10] See Verified Pet. ¶ 37. No Form 20-F was filed in 2024.

[11] The Company is referred to as "an exempted company incorporated with limited liability under the Companies Act (as amended) of the Cayman Islands, as amended and restated from time to time" in its publicly filed Form 20-F, submitted on March 4, 2021.

[12] It's 6-K filing contained a Notice of Annual General Meeting for shareholders on November 20, 2023, was to be held at 190 Elgin Avenue, George Town, Grand Cayman KY1-9001, Cayman Islands. Ex. 2 to Verified Pet. (Form 6-K, Oct. 17, 2023).

insolvency professionals. The Petitioners have worked from and made all decisions from their offices at Alvarez & Marsal Cayman Islands Limited in the Cayman Islands ("**A&M Cayman**"), the Company's nerve center. Kennedy Decl. ¶ 32, 34. The Petitioners have hired professionals from the Cayman Islands. *Id.* They have gathered books and records and maintained them in the Cayman Islands. *Id.* The Petitioners regularly communicate with creditors from the Cayman Islands, formed a creditors' committee and held their first creditors' meeting in their Cayman Islands office on May 30, 2024. *Id.* The Petitioners have also sent the reports that have provided creditors with an update on the progress of the Cayman Proceeding from the Cayman Islands. *Id.*; *see In re Fairfield Sentry Ltd.*, 714 F.3d at 137–38 (instructing that courts should focus on "any relevant activities, including liquidation activities and administrative functions," that demonstrate the "place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties"); *see also In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (extending rule from *Fairfield Sentry*, finding that COMI was based on the joint provisional liquidators' supervision, control, and decision-making functions from the Cayman Islands). The Cayman Proceeding has also been recognized as a main proceeding in the United Kingdom. Kennedy Decl. ¶ 32; Ex. 3 to Verified Petition (UK Recognition Order).

5. *Noteholders sought liquidation in the Cayman Islands and no creditors objected*. The Indenture Trustee of the 2027 Notes initiated the Cayman Proceeding, indicating these Noteholders' choice of COMI. *In re SPhinX, Ltd.*, 351 B.R. at 117 (noting that the court should generally defer "to the creditors' acquiescence in or support of a proposed COMI"). *See, e.g.*, *In re Mod. Land*, 641 B.R.768, 789 (Bankr. S.D.N.Y. 2022) (creditors expectations persuasive). No creditor, including Mr. Neves, objected to the entry of the Winding Up Order

because the Company publicly identifies as a company incorporated in the Cayman Islands. Kennedy Decl. ¶ 21. Thus, consistent with the SEC filings, creditors expected a liquidation of the Company to take place in the Cayman Islands, in accordance with the Companies Act.

6. *Cayman Islands Law is likely to govern disputes*. SEC filings made clear that the Company was governed by Cayman Islands law, and that the rights of stakeholders would be subject to Cayman Islands law. Further, under the internal affairs doctrine, Cayman Islands law would apply to claims, including those against D&Os, and Cayman Islands law will apply to statutory liquidator claims, like those pursuant to section 146 for dispositions at an undervalue, and section 147 for fraudulent trading.

7. *The Cayman Islands Court's role in the Cayman Proceeding is prevalent*. The Petitioners are empowered to bring or defend any action or other legal proceeding on behalf of the Company (subject to sanction of the Cayman Islands Court), carry on the business of the Company as may be necessary for winding up, dispose of any property of the Company, pay any class of creditors in full, convene meetings of creditors and contributories, and do all other things incidental to the exercise of the Petitioners' powers. Companies Act § 110(2). *See In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 417 (Bankr. S.D.N.Y. 2014) (similar powers deemed persuasive to show COMI where proceedings were ongoing). The Petitioners have recovered any known funds of the Company which are now in an account in the Cayman Islands (except the Reid Collins retainer). Kennedy Decl. ¶ 32.

8. *Recognition of the Cayman Proceeding as a foreign main proceeding would comport with the goals of chapter 15*. Section 1508 mandates that courts "consider [the] international origin [of chapter 15] and the need to promote an application of this chapter that is consistent with the application of similar statutes adopted by foreign jurisdictions." 11 U.S.C.

§ 1508. Accordingly, considerations of judicial cooperation and support for the foreign main proceeding in the Cayman Islands require that the Company should obtain recognition as a foreign main proceeding to avail itself of the protections offered under chapter 15. The COMI requirement "should not be applied in a manner that would effectively establish a presumption *against* recognition of cases from offshore jurisdictions." *In re Millennium Glob. Emerging Credit Master Fund Ltd. (Millenium Glob. I)*, 458 B.R. 63, 83 (Bankr. S.D.N.Y. 2011).

Here, the Company's pre- and post-Winding Up Order activities were and are centered in the Cayman Islands. The COMI of the Company is the Cayman Islands.

**C. In the Alternative, the Cayman Proceeding Should Be Recognized as a Foreign Nonmain Proceeding.**

Even if this Court does not recognize the Cayman Proceeding as a foreign main proceeding, the Court should nonetheless recognize it as a "foreign nonmain proceeding" under section 1517(b), which provides that a foreign proceeding shall be recognized as a foreign nonmain proceeding if it is pending in a country where the debtor has an establishment. 11 U.S.C. § 1517(b)(2). Section 1502 defines an "establishment" as "any place of operations where the debtor carries out a nontransitory economic activity." 11 U.S.C. § 1502(2).

"Nontransitory economic activity" is not defined in the Bankruptcy Code but has been interpreted to mean a "local place of business" or a place where a debtor has a "minimum level of organization" above a "purely occasional place of operations." *In re Millennium Global Emerging Credit Master Fund Ltd.*, 458 B.R. at 84–85; *In re British Am. Ins. Co. Ltd.*, 425 B.R. 884, 914–15 (Bankr. S.D. Fla. 2010).[13] "Whether the debtor has an 'establishment' in a country must be

---

[13] As an exempted company, the Company did not trade in the Cayman Islands, but it managed its ownership interest in other companies from the Cayman Islands, including by the Petitioners as part of the liquidation of the Company. *See* Goodman Declaration ¶17–18, 38.

determined at the time of the filing of the chapter 15 petition." *In re British Am. Ins. Co. Ltd.*, 425 B.R. at 915; *cf. In re Fairfield Sentry, Ltd.*, 714 F.3d at 133.

The Company is a holding company, and its function was owning its subsidiaries. The daily economic activity relating to Company is being carried out in the Cayman Islands. Kennedy Decl. ¶ 32. Thus, it has an establishment in the Cayman Islands based on the facts described above and set forth in the Kennedy Declaration. Therefore, if the Company's COMI is not in the Cayman Islands (which it is), in the alternative, the Cayman Proceeding must be recognized as a foreign nonmain proceeding.

## III. The Chapter 15 Case Has Been Commenced by Duly Authorized Foreign Representatives.

Section 1517's second requirement for recognition of a foreign proceeding is that the foreign representative applying for recognition is a "person or body." 11 U.S.C. § 1517(a)(2); *In re ABC Learning Centres Ltd.*, 445 B.R. at 333. The Petitioners are foreign representatives under section 101(24) of the Bankruptcy Code, which defines a "foreign representative" as a "person or body . . . authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding." Many courts have already held that a Cayman Islands liquidator is a "foreign representative." *See, e.g.*, *In re Ascot Fund Ltd.*, 603 B.R. at 278; *In re Ocean Rig UDW Inc.*, 570 B.R. at 699–700; *In re Am. Pegasus, SPC*, No. 11-34429 (Bankr. S.D.N.Y. Dec. 23, 2011) [Docket No. 20].

The Winding Up Order, the U.K. Recognition Order, the Verified Petition, the Kennedy Declaration, and the Goodman Declaration (and all exhibits thereto), all show that the Petitioners are duly authorized to act as the foreign representatives in this chapter 15 case. Pursuant to the Winding Up Order, the Petitioners were appointed by the Cayman Court and are duly authorized to act as liquidators of the Company. *See* Attachment to Form 401 Petition (Winding Up Order);

Kennedy Decl. ¶¶ 1, 6, 25. Their powers are broad. Companies Act § 110. The Petitioners are the sole persons with the authority and power to act in the name of the Company. Kennedy Decl. ¶¶ 25, 31. With the requisite sanction of the Cayman Court, the Petitioners have the power to compromise claims, commence litigation, and dispose of the Company property. *Id.*; Ex. 3 to Verified Petition (UK Recognition Order); Companies Act § 110(1)–(2).

Moreover, the Petitioners have been actively exercising these powers. Since the Petitioners' appointment, they have directed the operations of the Company and maintained the Company's estates. Kennedy Decl. ¶ 31. The Petitioners have sought books and records of the Company from various advisors and directors, hired counsel, scheduled and held creditors' meetings, formed a committee of creditors, recovered funds and opened a bank account. *Id.* The Petitioners thus fall squarely into the definition of "foreign representatives" within the meaning of section 101(24).

## IV. The Petitioners Meet the Requirements of Section 1515.

Recognition of a foreign proceeding under Bankruptcy Code 1517(a) requires that the petition meet section 1515's technical filing requirements. *In re ABC Learning Centres Ltd.*, 445 B.R. at 334. The Petitioners' Verified Petition and accompanying exhibits fulfill these prerequisites.

Section 1515(b) requires a foreign representative to file a certified copy of the decision commencing the foreign proceeding and appointing the foreign representative. Here, the Verified Petition is accompanied by a certified copy of the Winding Up Order that details the proceedings and appointment of the Petitioners as joint official liquidators of the Company. *See* Attachment to the Form 401 Petition (Winding Up Order).

Section 1515(c) provides that a foreign representative must file a statement identifying all foreign proceedings with respect to the debtor that are known to the foreign representative. The

Statement of Foreign Representatives Pursuant to 11 U.S.C. § 1515(c), submitted with the Form 401 Petition, establishes that the Cayman Proceeding is the only foreign proceeding.

In addition, the Petitioners have filed a list containing the names and addresses of all persons or bodies authorized to administer the foreign proceeding of the Company and all parties to litigation pending in the United States in which the Company is a party, per Bankruptcy Rule 1007(a)(4)(B). Attachment to the Form 401 Petition (Statement of Foreign Representatives). Petitioners have also filed a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1 as required by Bankruptcy Rule 1007(a)(4)(A). *Id.* Further, Petitioner Christopher Kennedy filed a verification pursuant to 28 U.S.C. § 1746 regarding the Verified Petition, filed contemporaneously therewith.

Accordingly, the Petitioners have met all of the requirements of section 1515 and the Bankruptcy Rules.

## V. Recognition of the Cayman Proceeding Is Not Manifestly Contrary to U.S. Public Policy.

The final requirement for recognition is that the relief sought not be "manifestly contrary to the public policy of the United States." *See* 11 U.S.C. § 1506. Congress intended this "manifestly contrary" exception in section 1506 to be narrowly construed. *In re ABC Learning Centres Ltd.*, 728 F.3d at 309. "The purpose of the expression 'manifestly,' . . . is to emphasize that public policy exceptions should be interpreted restrictively and that [the exception] is only intended to be invoked under exceptional circumstances concerning matters of fundamental importance for the enacting State." *Id.* (quoting U.N. Comm'n on Int'l Trade Law, *Guide to Enactment of the UNCITRAL Model Law on Cross-Border Insolvency* ¶ 89, U.N. Doc A/CN.9/442(1997); *see also In re Ephedra Prods. Liability Litig.*, 349 B.R. 333, 336 (S.D.N.Y. 2006) ("[T]he word 'manifestly' in international usage restricts the public policy exception to the most fundamental

policies of the United States." (citations omitted)). Recognition of the Cayman Proceeding is clearly not manifestly contrary to the public policy of the United States.

**VI. Recognition Promotes the Purpose and Scope of Chapter 15.**

One of the fundamental goals of the Bankruptcy Code is to centralize disputes involving a debtor. *See, e.g.*, *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . ." (internal citations omitted)). The Cayman Proceeding provides for a centralized process to assert and resolve creditor claims, and ultimately to make distributions to the Company's creditors. The grant of recognition in this case will assist the orderly winding up of the Company by the Petitioners under the supervision of the Cayman Court. This result is entirely consistent with the public policy of the United States.

Furthermore, recognition of the Cayman Proceeding is consistent with the purpose of chapter 15, and it would foster cooperation between the Cayman Court and courts of the United States. *See In re ABC Learning Centres Ltd.*, 728 F.3d at 304 (explaining that Congress enacted chapter 15 with the goal of promoting cooperation between U.S. courts and "other competent authorities of foreign countries involved in cross-border insolvency cases"). As stated above, recognition of the Cayman Proceeding will also promote the fair and efficient administration of the Cayman Proceeding and protect the rights of all creditors and interested entities. Creditors would be required to assert their claims in accordance with Cayman Islands law and any disputes would be subject to the uniform jurisdiction of one tribunal: the Cayman Court. In contrast, if recognition is not granted, the result could be a diminution of the estate's value due to inefficiencies, and lower or less fair recoveries for creditors and investors of the Company.

Thus, granting recognition of the Cayman Proceeding promotes the public policy of the United States and furthers the objectives of chapter 15.

## VII. Mandatory Relief under Section 1520

Upon recognition of the Cayman Proceeding as a foreign main proceeding, the Petitioners are automatically entitled to relief under section 1520(a), including relief under sections 361, 362, 363, 549, and 552 of the Bankruptcy Code.[14] 11 U.S.C. § 1520(a)(1); *id.* § 362(a) (providing for an automatic stay of proceedings against the debtor and property of the estate). The Petitioners need stay relief to enjoin the Actions, which are currently ongoing, and others which might be filed against them.

## VIII. Additional Relief Pursuant to Section 1521

Upon recognition of the Cayman Proceeding, either as a foreign main or foreign nonmain proceeding, this Court is empowered to grant "any appropriate relief" necessary to effectuate chapter 15's purpose and to protect the Company's assets or the interests of its creditors. 11 U.S.C. § 1521(a). Relief under section 1521(a) is available so long as the interests of the creditors and other interested entities, including the debtor and interested parties located outside of the United States, are sufficiently protected. 11 U.S.C. § 1522(a). [15]

---

[14] Section 1520(a) provides that, upon recognition of a foreign main proceeding:

> (1) sections 361 and 362 apply with respect to the debtor and the property of the debtor that is within the territorial jurisdiction of the United States;
>
> (2) sections 363, 549, and 552 apply to a transfer of an interest of the debtor in property that is within the territorial jurisdiction of the United States to the same extent that the sections would apply to property of an estate;
>
> (3) unless the court orders otherwise, the foreign representative may operate the debtor's business and may exercise the rights and powers of a trustee under and to the extent provided by sections 363 and 552; and
>
> (4) section 552 applies to property of the debtor that is within the territorial jurisdiction of the United States.

11 U.S.C. § 1520(a).

[15] Even if this Court were to recognize the Cayman Proceeding as a foreign nonmain proceeding (rather than as a foreign main proceeding), section 1521 relief is available where the Court is "satisfied that the relief relates to assets that, under the laws of the United States, should be administered in the foreign nonmain proceeding or concerns information required in that proceeding." 11 U.S.C. § 1521(c).

The Petitioners request an order granting additional relief under section 1521. Specifically, the Petitioners request an order:

- staying actions against and/or concerning the Company and its property as fully set forth in section 1521(a)(1) and (2);
- preventing transfers, dispositions, and encumbrances as fully set forth in section 1521(a)(3);
- authorizing the Petitioners to issue subpoenas, examine witnesses, take Rule 2004 examinations, take evidence, seek production of documents, and deliver information concerning the assets, rights, obligations or liabilities of the Company for the purposes of locating and analyzing the Company's assets and liabilities, and obtaining recovery of the Company's books and records as fully set forth in section 1521(a)(4);
- entrusting the administration or realization of the Company's assets as fully set forth in section 1521(a)(5);
- awarding the Petitioners such other and further relief as this Court may deem just and proper.

An additional stay of actions against and/or concerning the Company is needed "to the extent they have not been stayed under section 1520(a)."[16] 11 U.S.C. § 1521(a)(1) and (2). *See In re Qimonda AG*, 482 B.R. 879, 893 (Bankr. E.D. Va. 2012) (finding that an act to exercise control over chapter 15 debtor's property would violate section 362(a)(3), but alternatively enjoining act to exercise control over property of the debtor under section 1521(a)(1) "to the extent that Section 362(a)(3) may not apply . . . because no estate is created" under chapter 15).

Because the Petitioners have not received important records that can verify the location of all assets of the Company, they also seek section 1521(a)(3) relief to suspends the right to transfer, encumber or otherwise dispose of any assets of the debtor "to the extent this right has not been suspended under section 1520(a)." *See O'Sullivan v. Loy (In re Loy)*, 432 B.R. 551, 562 n. 15 (E.D.

[16] To the extent foreign law and the law of the United States, read together, create confusion or conflict (such as by the lack of an "estate" in chapter 15 or by application of foreign enforcement law) and thereby limit the application of section 362, the Petitioners include this request.

Va. 2010) (explaining that section 1521(a)(3) gives the court discretion to grant additional supplemental relief not already provided by section 1520(a)).

To investigate the Company's sudden financial downfall as well as the Coupang Sale, the Petitioners also request section 1521(a)(4) relief. This relief will allow the Petitioners to obtain evidence and examine witnesses, and take . . . "delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities," including through the issuance of subpoenas and Rule 2004 requests. 11 U.S.C. § 1521(a)(4). *See In re Millenium Global Emerging Credit Master Fund Ltd.*, 471 B.R. 342, 346 (Bankr. S.D.N.Y. 2012) ("[T]his provision enables a Foreign Representative to take broad discovery concerning the property and affairs of a debtor."). Indeed, such relief "is available to foreign representatives investigating potential causes of action irrespective of how any future litigation proceeds might be used." *In re Comair Ltd.*, No. 21-10298, 2021 WL 5312988, at *10 (Bankr. S.D.N.Y. Nov. 14, 2021).

Information obtained by way of this relief will allow the Petitioners to (i) determine the cause of the Company's sudden and dramatic change in financial position in 2023, through among other things, financial records not turned over the Petitioners or third party communications, including with creditors of the Company; (ii) review directors' and officers' decisions through management communications, board communications, and related documents during the time relating to certain Company decisions; and (iii) understand the facts and circumstances leading to the Coupang Sale and related financings, and the process in which the terms of such sale and financings were determined. Such information is essential for the Petitioners to understand whether claims may exist and to recover assets of the Company by pursuit of such claims or otherwise, which the Petitioners have a statutory obligation to do under the Companies Act.

Relief under section 1521(a)(5) is also appropriate because it permits the delivery of assets

in the United States to a foreign representative or another person for administration or realization, to the extent the Petitioners discovery uncovers such assets. *In re Irish Bank Resolution Corp. Ltd.*, 559 B.R. 627, 643 (Bankr. D. Del. 2016). To the extent assets have not been turned over to the Petitioners, it will allow such delivery.

Further, should any claims arise after this investigation, the Petitioners wish an order making clear that they are entitled to utilize Bankruptcy Code section 108, since Bankruptcy Code section 103(a) provides that Chapter 1 of the Bankruptcy Code applies to Chapter 15 cases. *See In re Fairfield Sentry Ltd.*, 452 B.R. 52, 62–64 (Bankr. S.D.N.Y. 2011) (holding that section 108 relief is automatically available to foreign representatives upon recognition as a foreign main proceeding). The date of any concerning events is not yet clear to the Petitioners, and thus, this relief will increase the viability of any possible claims.

## CONCLUSION

WHEREFORE, Petitioners respectfully request that this Court enter orders: (i) recognizing the Cayman Proceeding as a foreign main proceeding, or alternatively as a foreign nonmain proceeding, (ii) granting additional relief set forth above upon recognition; and (iii) granting such other and further relief as may be just and proper.

Dated: July 10, 2024
Wilmington, Delaware

REID COLLINS & TSAI LLP

*/s/ Jonathan M. Kass*
Jonathan M. Kass (Del. Bar No. 6003)
300 Delaware Avenue
Suite 770
Wilmington, DE 19801
Tel.: (302) 467-1766
Email: jkass@reidcollins.com

William T. Reid, IV (*Pro hac vice pending*)
Angela J. Somers (*Pro hac vice pending*)
420 Lexington Avenue, Suite 2731
New York, New York 10170
Tel.: (212) 344-5200
Email: wreid@reidcollins.com
asomers@reidcollins.com

*Counsel to the Foreign Representatives*